# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| STEVEN L. RIGBY, | Case No.: CV 09-00309-EJL-REB |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| MICHAEL ASTRUE, Commissioner of Social Security | |
| Respondent. | |

Now pending before the Court is Steven L. Rigby's Petition for Review (Docket No. 2), seeking review of the Social Security Administration's final decision to deny his claim for disability insurance benefits. This action is brought pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Report and Recommendation:

## I. ADMINISTRATIVE PROCEEDINGS

Petitioner applied for Social Security disability benefits on September 11, 2003; he was denied initially and, again, on reconsideration. *See* Def.'s Mem., p. 3 (Docket No. 15). Petitioner made a timely request for a hearing before an Administrative Law Judge ("ALJ"). *See id.* On October 7, 2005, ALJ John C. Arkoosh held a hearing in Boise, Idaho, at which time, Petitioner, represented by attorney Andrea Cardon, appeared and testified. (AR 82). On February 22, 2006, the ALJ issued an unfavorable decision. (AR 82-91). On April 19, 2006,

**REPORT AND RECOMMENDATION - 1**

Petitioner requested that the Appeals Council review the ALJ's February 22, 2006 decision. (AR 112-113). On September 22, 2006, the Appeals Council vacated the February 22, 2006 decision, issuing an order remanding the case for further proceedings. (AR 122-124).

On December 13, 2007, ALJ Michael A. Kilroy held a second hearing in Boise, Idaho, at which time, Petitioner, again represented by attorney Andrea Cardon, appeared and testified. (AR 34). A vocational expert, Anne Aastum, and Petitioner's neurologist, Michael O'Brien, also appeared and testified during the same December 13, 2007 hearing. *See id.* The ALJ issued a partially favorable decision on February 14, 2008, finding that Petitioner was not disabled before March 23, 2006, but became disabled as of that same date. (AR 34-47). Petitioner timely requested review from the Appeals Council on or around April 8, 2008. (AR 27-28). On February 19, 2009, the Appeals Council denied Petitioner's request for review, making the ALJ's February 14, 2008 decision the Commissioner of Social Security's final decision. (AR 21-23).

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing, generally, that the ALJ's February 14, 2008 decision is not supported by substantial competent evidence and contains errors of law. *See* Pet. for Review, p. 2 (Docket No. 2). Petitioner seems to request that the Court reverse the ALJ's February 14, 2008 decision and order the payment of benefits between March 30, 2004 and March 22, 2006 or, alternatively, remand the case for proper consideration of the evidence. *See, e.g.*, *id*. at p. 6.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health,*

*Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or

considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole

to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony,

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel.*

*Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically

flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the

evidence is susceptible to more than one rational interpretation in a disability proceeding, the

reviewing court may not substitute its judgment or interpretation of the record for that of the

ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

**REPORT AND RECOMMENDATION - 3**

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. REPORT

### A. Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ

found that Petitioner "has not engaged in substantial gainful activity since March 30, 2004, the amended alleged onset date." (AR 37).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: lumbar and cervical disc disease; and left shoulder generalized arthritis. (AR 37). The ALJ went on to state that "[t]hese impairments and related pain significantly limited [Petitioner's] ability to perform basic work activities and are therefore severe within the meaning of the regulations." *See id*.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the

evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments, including "the most relevant listings" 1.02 and 1.04.  (AR 37).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that, prior to March 23, 2006, Petitioner had the residual functional capacity to perform a range of light work with the following limitations: (1) he would need the opportunity to alternate between walk, stand, and sit throughout an 8-hour workday; and could walk 1-2 blocks at a time, stand 45 minutes at a time, and sit 45 minutes at a time, at a minimum; (2) he could lift between 10-20 pounds occasionally and 10 pounds frequently; (3) he could reach overhead occasionally, and push/pull in the upper extremities occasionally; (4) he could balance frequently; (5) he could seldom crawl; (6) he could not climb except ramps or stairs occasionally; (7) he could stoop, kneel, and crouch occasionally; and (8) he would need to avoid concentrated exposure to vibrations, extreme temperatures/cold, and uneven slippery surfaces.  (AR 37-44).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that, prior to March 23, 2006, Petitioner was able to perform his past relevant work as an accounting clerk and as a mail handler. (AR 45).

## B.  Analysis

Rather than specifically challenging the ALJ's denial of disability benefits on discrete points, Petitioner takes issue with the administrative record itself, arguing (1) Dr. Friedman's opinions and those of the state agency non-examining sources are incomplete and flawed (*see* Pet.'s Brief in Supp. of Pet. for Review, pp. 2-7 (Docket No. 14)); (2) the administrative record was not properly developed (*see id.* at pp. 7-8; 15-16); (3) Dr. Stowell's medical records are inaccurate and his conduct in treating Petitioner was unethical (*see id.* at pp. 10-11); (4) clerical errors in the record establish the Commissioner's misconduct (*see id.* at pp. 11-13); and (5) the Commissioner's Answer to the Petition for Review is lacking in that it fails to respond to Petitioner's allegations (*see id.* at pp.13-14).[1]

---

[1]  In his Reply Memorandum, Plaintiff further argues that the ALJ (1) improperly questioned his credibility (*see* Reply to Resp.'s Resp., pp. 3-4 (Docket No. 16)); and (2) did not adequately consider the opinions of Dr. O'Brien during the December 13, 2007 hearing (*see id.* at pp. 11-12). Typically, arguments raised for the first time in a Reply Memorandum are waived. *See U.S. v. Quinonez*, 2010 WL 2740294, * 8 (D. Idaho 2010). However, for completeness sake, the Court will consider these additional arguments here.

1. <u>Dr. Friedman and the State Agency Non-Examining Sources</u>

   *a.    Dr. Friedman*

On November 20, 2003, Dr. Friedman examined Petitioner, finding at that time that Petitioner experienced (1) left shoulder pain with possible mild tendonitis; (2) low back pain, history of lumbar surgery; and (3) relatively new onset of right upper extremity pain with no tender spots or trigger points. (AR 241-244). Despite these conditions, Dr. Friedman concluded that Petitioner had only minor limitations:

> It is my medical opinion that he has no restrictions in sitting, standing or walking. He should be limited to a lifting of a medium work level, i.e. 50 pounds occasionally and 25 pounds repetitive based on his lumbar spine surgery. He has no difficulty carrying or handling objects. He has no difficulty with hearing, speaking, or traveling.

(AR 244). Petitioner understandably disagrees, repeatedly attacking Dr. Friedman's conclusions as inconsistent with the balance of the record and Petitioner's own recollection:

- "Although Dr. Friedman makes reference to the medical records that were available to him, it is obvious that he disregards that entire body of objective medical evidence in favor of stating his own impression of the claimant's condition based on his own very brief and cursory exam lasting only a few minutes in his office exam room." *See* Pet.'s Brief in Supp. of Pet. for Review, p. 3 (Docket No. 14).

- "The impression that Dr. Friedman gives does not in any way correlate or even make sense when compared with the volume of highly technical and detailed imaging reports made available for his comparison and review." *See id.*

- "Dr. Friedman makes statements in this report that the Plaintiff said or related to him, that the Plaintiff submits are untrue and inaccurate." *See id.*

- "Dr. Friedman also makes notations about his physical examination of the Plaintiff, which the Plaintiff again submits are untrue and inaccurate, and the Plaintiff absolutely disagrees." *See id.*

- "The Plaintiff would challenge Dr. Friedman's statements and recommendations, arguing that any other medical doctor would not make such statements or

**REPORT AND RECOMMENDATION - 8**

recommendations if given the same body of objective medical evidence that was made available to Dr. Friedman at the time of this exam." *See id*. at pp. 3-4.

- "The Plaintiff argues that the S.S.A. disability doctor, Dr. Friedman, not only disregarded the existing body of objective medical evidence, but that Dr. Friedman purposely makes his report sound like the claimant has no physical problems at all." *See id*. at p. 4.

- "Dr. Friedman makes this report that is almost entirely contradicted and shown to be ridiculous in the face of the very medical evidence that was made available to him." *See id*.

- "The Plaintiff would argue that Dr. Friedman's evaluation is no less than another blatant attempt by the S.S.A. to diminish and disregard the facts in this claimant's case for disability." *See id*.

- "On page 242 of the Admin. Rec., Dr. Friedman makes the statement in the last sentence of the first paragraph: 'The physician that released him to return to work.' The Plaintiff was not ever released to return to work, and this is a false statement. The Plaintiff would argue much of Dr. Friedman's reports." *See id*.

Clearly, Petitioner disputes Dr. Friedman's findings. In doing so, however, Petitioner ignores the ALJ's consideration of Dr. Friedman's opinions when considering Petitioner's claim for disability. In his decision, the ALJ states in no uncertain terms:

> Next, Dr. Friedman expressed his opinion in November 2003 . . . that the claimant was capable of medium work. The claimant visited Dr. Friedman who evaluated his condition in connection with his disability application. Because Dr. Friedman examined the claimant only once and his conclusion was inconsistent with the bulk of the evidence, his opinion was given less weight than Dr. Stowell who treated him.

(AR 42). In other words, the ALJ actually *agreed* with Petitioner with respect to Dr. Friedman's recommendations. Because the ALJ did not rely on Dr. Friedman's November 2003 report when reaching his own disability conclusions, Petitioner's arguments on this point are without merit.

        b.        *The State Agency Non-Examining Sources*

On or around December 4, 2003, the state agency medical consultants performed a "Physical Residual Functional Capacity Assessment". (AR 246-253). Based upon a record

review, these consultants determined that Petitioner was capable of (1) occasionally lifting 50

pounds; (2) frequently lifting 25 pounds; (3) standing and/or walking (with normal breaks) for a

total of about six hours in an eight-hour workday; (4) sitting (with normal breaks) for a total of

about six hours in an eight-hour workday; and (5) unlimited pushing and/or pulling (including

operation of hand and/or foot controls). (AR 247). In addition to also finding no postural

limitations (AR 248), no manipulative limitations (AR 249), no visual limitations (AR 249), no

communicative limitations (AR 250), and, generally, no environmental limitations (AR 250),[2]

the Physical Residual Functional Capacity Assessment made the following conclusion:

> Medically determinable impairment is established. However, the
> claimant's reports of constant pain are somewhat out of proportion
> with the objective findings. He reports inability to sit or stand for
> long periods, although he was able to sit through the entire
> disability interview at SSA without visible discomfort. Physical examination
> is fairly normal. He is partially credible.

(AR 251). On reconsideration (apparently around April 2, 2004), the findings were affirmed

with no changes applied to Petitioner's residual functional capacity. (AR 255-256) ("The

claimant retains the capacity for medium duty work, including his past work as a banking

accountant assistant or postal clerk.").

Again, Petitioner disagrees, offering up a number of criticisms directed at the consultants

and their Physical Residual Functional Capacity Assessment (and subsequent reconsideration).

For example:

- "On pages 246-255 from the Admin. Rec., are reports from the S.S.A. signed by
  both medical doctors and S.S.A. employees. The Plaintiff submits to the Court
  that the entire content of remarks, opinions, and judgments made within the range

---

[2] With the exception of avoiding concentrated exposure to vibration, it was indicated that
Petitioner could tolerate "unlimited" exposure to all other environmental conditions. (AR 250).

of these pages are not only untrue, inaccurate, and erroneous, but they are truly an outrageous mockery of the laws and regulations regarding the S.S.A.'s disability system. These pages are surely enough to anger and enrage any U.S. citizen who expects the S.S.A. to honestly and fairly process any claim for disability. This again is a very clear and obvious incompetent, negligent, and even unlawful treatment of this Plaintiff's claim for disability." *See* Pet.'s Brief in Supp. of Pet. for Review, p. 4 (Docket No. 14).

• "There is absolutely no reference to any evidence in the file other than reference to Dr. Friedman's report. Dr. Friedman, who's report is highly incorrect and flawed as discussed above. Evidently it is allowable within the S.S.A. for two different doctors and also at least two other S.S.A. employees to disregard the S.S.A. instructions, clearly stated on the first page of these forms. Furthermore, the Plaintiff submits that if these medical consultants and the disability adjudicators ignore all the evidence in the file, then there is no evidence to substantiate your conclusions." *See id*. at p. 5 (emphasis in original).

• "The Plaintiff would like to argue that all of the limitation recommendations made on page 247 of the Admin. Rec. must be the S.S.A.'s idea of a joke. As the medical record reflects, the Plaintiff has a broken disc in his spine, and how anyone can make these judgements with the knowledge that the Plaintiff has a broken spine is way beyond any reason." *See id*.

• "Page 248 states that the Plaintiff 'sustained L4/5 disc herniation in 1996', again this is diminishing and inaccurate because the Plaintiff sustained no less than a 'disc fragmentation', that is a disc that has been blown apart to the point that a 'fragment' of the disc has been torn away from the disc, and now floats freely within the Plaintiff's spinal fluid sac. Once again it is clear that the S.S.A. is diminishing and obscuring the actual true facts that were available to them in the record." *See id*.

• "Another statement that 'symptoms improved with conservative treatment", is also inaccurate. The Plaintiff's symptoms have not ever improved over the thirteen years since that injury." *See id*.

• "This page also makes reference to shoulder problems as 'possibly mild tendonitis', and as the record shows, the imaging reports discuss much more than mild tendonitis. These omissions should not be overlooked in the Court's review." *See id*. at pp. 5-6.

• "The entire body of bold-typed statements made on page 251 of the Admin. Rec. [*see supra* at p. 10], is nothing less than slander and libel toward the character of the Plaintiff. These statements can only possibly be made with total ignorance of

the existing medical evidence, or by purposeful disregard of the facts, in favor of the S.S.A. to re-write a different version to support their denial of benefits to the Plaintiff. To quote, 'the claimant's reports of constant pain are somewhat out of proportion with the objective findings.' It is easy for the S.S.A. to make such a statement, if in fact they totally ignore the 'objective findings.'" *See id.* at p. 6.

• "They also write, 'he was able to sit through the entire disability interview at the S.S.A. without visible discomfort.' This is not the only time that the S.S.A. seems to make a judgment based on the Plaintiff's appearance. Again, the Plaintiff submits that not only had he lived with years of constant pain, but was fairly accustomed to spending weeks and sometimes months in crippling and disabling episodes where the Plaintiff cannot walk or ambulate very well at all." *See id.*

• "The next statement made on this page says, 'physical examination is fairly normal.' This statement calls for someone to explore what it is supposed to really mean. The Plaintiff has already discussed how a brief cursory physical exam compares to the large amount of detailed hospital imaging reports, and would argue with these kind of statements." *See id.* at pp. 6-7.

• "[T]he only things not credible in this entire case are the statements and actions of the S.S.A., S.S.A. doctors, S.S.A. consultants, S.S.A. employees, and the S.S.A. ALJ's, that have been a part of Plaintiff's case." *See id.* at p. 7.

• "When the S.S.A.'s Dr. Friedman and the medial consultants make the statements and judgments on page 252 of the Admin. Rec., they very much contradict what the treating or examining sources have submitted to the record." *See id.* at p. 8.

• "Page 254 of the Admin. Rec. is very ironically entitled 'Rationale.' The Plaintiff once again argues that the statements and judgments made on this page would very much contradict the fact that this claimant not only had a broken disc in his lower spine, but also had documented problems in both arms and up one side of the neck. There is not even one rational thing about the information presented on this page and the S.S.A. should be ashamed and should not be allowed to treat any claimant in such a way." *See id.*

• "Page 255 of the Admin. Rec. is no different from the previous page. There are statements that diminish the actual record. There are obvious omissions of other facts. There are statements attacking the Plaintiff's character and credibility. And again, there are many statements that are outright untrue, inaccurate, or fabricated altogether. It is deplorable how someone calling themselves a 'disability adjudicator' can assign their name to such a document. There is no 'rationale' how the S.S.A. can even generate such documents, let alone be allowed to ever generate them." *See id.* at p. 9

**REPORT AND RECOMMENDATION - 12**

Consistent with his reaction to Dr. Friedman, Petitioner clearly questions the validity and import of these findings. However, once again, Petitioner overlooks the ALJ's corresponding dismissal of these same findings:

> As noted above, the State agency non-examining medical consultants opined the claimant was capable of medium work consistent with the Dr. Friedman's opinion. The opinions of the State agency non-examining sources are not given significant weight because they relied heavily on Dr. Friedman's opinion which was not credited in determining the claimant's residual functional capacity, and due to additional evidence and testimony received at the hearing level that showed the claimant was more limited, and due to further consideration of the claimant's subjective complaints.

(AR 42-43). Once again, the ALJ actually *agreed* with Petitioner when it came to the Physical Residual Functional Capacity Assessment's conclusions. As a result, because the ALJ did not rely on the Physical Residual Functional Capacity Assessment when reaching his own disability conclusions, Petitioner's arguments on this point are without merit.

2. The Administrative Record

Throughout his briefing, Petitioner questions the completeness of the administrative record, pointing to the absence of (1) alleged documents from Dr. Havlina (*see* Pet.'s Brief in Supp. of Pet. for Review, pp. 7-8; 15 (Docket No. 14)), (2) Dr. Stowell's actual office visit records (*see id*. at p. 11), (3) records from Myler Law Offices (*see id*. at pp. 11-13) and (3) Petitioner's earlier disability claim materials, including administrative record (*see id*. at pp. 15-16). But Petitioner overlooks his own obligation to provide a complete record of his disabilities; in doing so, Petitioner's arguments on this point are without merit.

According to 20 C.F.R. § 404.1512, it is Petitioner's responsibility to bring to the Commissioner's attention everything showing a claimed disability. *See* 20 C.F.R. § 404.1512(a)

**REPORT AND RECOMMENDATION - 13**

("This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis."); *see also* 20 C.F.R. § 416.912(a). Indeed, when questioned during the December 13, 2007 hearing, Petitioner's counsel confirmed to the ALJ that the record was complete:

ALJ:  Okay. With that, very briefly, a couple of administrative things, and then we'll certainly take the doctor first. Ms. Cardon, have you had the opportunity to review the file?

ATTY:  Yes, sir.

ALJ:  Up until today consisted of the following, we do have an A and B portion of the file. They're not paginated, but they are here and part of the record. The D folder has five items in it. The E has 13. And the F had 12 sets of medical records. I've received a couple new things since the record was last put together, I think just this morning, actually. From Ms. Aastum, I have a single page work summary that's been marked as 15E. Did you get a copy of that?

ATTY:  Yes, sir.

ALJ:  14E are the form that we usually send out. And I appreciate getting them back, they were medical treatment, medications, and work background, and then some medical records starting with a letter from Dr. O'Brien. And his letter is dated July 11, 2007. And that's an eight-page package of records. Any objections to anything in the file?

ATTY:  No.

ALJ:  Anything outstanding at this point that you're aware of that you need some more time to get?

ATTY:  No, sir.

(AR 403); *see also* (AR 460) (Petitioner's counsel agreeing with ALJ that record is complete following hearing).

**REPORT AND RECOMMENDATION - 14**

Simply put, the Commissioner is not tasked with ensuring the administrative record incorporates all that Petitioner expects to be included. Moreover, any argument that the record is incomplete is further compromised by the fact that Petitioner's own counsel represented to the ALJ (at least twice) that the administrative record was complete. These realities combine to dismiss Petitioner's arguments on this point.

3. Dr. Stowell

Dr. Stowell treated Petitioner during the relevant time period here - pre-March 23, 2006. Cross-referencing Dr. Stowell's treatment records for Petitioner, the ALJ gave moderate weight to Dr. Stowell's overall opinion that Petitioner was capable of light work with restrictions. (AR 42) (citing (AR 214-219, 222-223)). Petitioner, though, criticizes Dr. Stowell, commenting:

> Dr. Stowell was very well aware of the severity of the Plaintiff's condition, he knew that the Plaintiff only sought medical help, and that the Plaintiff was only attempting to keep his hard fought for job at the Postal Service. Anyone who reviews Dr. Stowell's submissions can clearly see that there are many contradictions within them. Many of the statements made are untrue, and much of the facts have been omitted.

*See* Pet.'s Brief in Supp. of Pet. for Review, p. 11 (Docket No. 14).

Aside from offering generalizations about the "many contradictions" within Dr. Stowell's treatment notes, Petitioner does not offer any objective evidence - other than Dr. O'Brien (*see infra* at pp. 19-21) - that is at odds with Dr. Stowell's opinions. Without dismissing Petitioner's obvious dissatisfaction with Dr. Stowell's opinions and conduct, this Court must view the record as-is; doing so, reveals that Dr. Stowell's insight is entitled to the weight the ALJ lends to it. Therefore, Petitioner's argument on this point is without merit.

**REPORT AND RECOMMENDATION - 15**

4.    Clerical Errors

Petitioner correctly points out a number of mistakes in the record - namely, mis-dated

correspondence (*see* Pet.'s Brief in Supp. of Pet. for Review, pp. 11-13 (Docket No. 14)).[3]

While it is unfortunate that the record is not without these clerical errors, the undersigned cannot

agree with Petitioner that "[i]t seems that the S.S.A. is either highly incompetent and negligent

regarding these important documents, or they are purposely attempting to confuse or obscure the

records when claimants such as the Plaintiff are requesting copies or information related to their

very own files."  *See id.* at p. 12.

Without questioning the importance of these materials to Petitioner, the Court considers

these errors to be hasty oversights that bear no substantive effect on the ALJ's final disability

determination; said another way, these mistakes amount to harmless error and, without more,

cannot operate to remand the ALJ's decision.  *See, e.g.*, *Curry v. Sullivan*, 925 F.2d 1127, 1131

(9th Cir. 1990) (applying harmless error rule to ALJ's error with respect to claimant's age and

education).  Therefore, Petitioner's argument on this point is without merit.

5.    The Commissioner's Pleadings

Referencing Respondent's October 21, 2009 Answer (Docket No. 11), Petitioner disputes

certain dates cited therein (namely, the date of Petitioner's appeal) (*see* Pet.'s Brief in Supp. of

Pet. for Review, p. 13 (Docket No. 14)) and, generally, objects to the Answer's substance as

amounting to "nothing [more] than a denial of any of the allegations made in the Plaintiff's

complaint" (*see id.* at p. 14).  Respondent's Answer, while not satisfactory to Petitioner,

nonetheless complies with FRCP 8(b).

---

[3]  Respondent agrees that the administrative record contains correspondence with
incorrect dates.  *See* Def.'s Mem., p. 3 (Docket No. 15) ("Petitioner is correct that there are
mistakes in the record, but they did not result in legal errors in the ALJ's decision.").

FRCP 8(b) governs the scope of the at-issue pleading. Pursuant to that Rule, a party must: (1) state in short and plain terms its defenses to each claim asserted against it; and (2) admit or deny the allegations asserted against it by an opposing party. *See* Fed. R. Civ. P. 8(b)(1). Additionally, general denials are permitted within responsive pleadings, as are statements indicating a lack of knowledge (which has the effect of a denial). *See* Fed. R. Civ. P. 8(b)(3) & (5). Respondent's Answer does not violate these general pleading rules. Therefore, Petitioner's argument on this point is without merit.

      6.    <u>Petitioner's Credibility</u>

Petitioner also disagrees with the ALJ's conclusion that Petitioner's testimony concerning the intensity, persistence, and limiting effects of his symptoms is not credible with respect to the time period prior to March 23, 2006. *See* Reply to Resp.'s Resp., pp. 3-4 (Docket No. 16).[4] As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). It should be noted, however, that to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons

---

[4] The ALJ *did* consider Petitioner's statements concerning the intensity, persistence, and limiting effects of his symptoms to be credible as of March 23, 2006. (AR 41).

for doing so.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).  Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

Notwithstanding Petitioner's testimony, the ALJ highlighted evidence suggesting that Petitioner may not have been entirely objective when describing his alleged inability to work before March 23, 2006.  For example:

- Despite his alleged incapacitating pain, Petitioner achieved a 50% to 60% pain reduction once he started a trial of morphine sulfate throughout 2005.  (AR 41) (citing (AR 264) ("His improvement hovers between 50-60% which is acceptable to patient.")).[5]

- For two years, from 2000-2002, Petitioner completed a course in automotive technology.  (AR 42) (citing (AR 280) ("In 2000, he again went to be a student and this time took a course in automotive technology.  This was a two-year course that he did complete and did achieve a certificate in 2002.")).

- In 2002, Petitioner himself reported "no difficulties with [Activities of Daily Living] or work responsibilities."  (AR 42) (citing (AR 233)).

These reasons, together with the balance of potentially conflicting medical evidence, offer clear and convincing explanations as to why the ALJ did not find Petitioner entirely credible.  The ALJ's conclusion, while potentially at odds with another's interpretation of that same evidence, is nonetheless supported by substantial evidence in the record.  As required by controlling law, the ALJ will not be second-guessed here.  *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support

---

[5] Before 2005, Petitioner admitted that he made only a few visits to a free clinic due to pain.  (AR 42).

**REPORT AND RECOMMENDATION - 18**

more than one rational interpretation, we must defer to the Commissioner's decision." (internal

citations omitted)).

7. Dr. O'Brien

With his Reply Memorandum, Petitioner offers the ALJ's alleged mishandling and

disregard of Dr. O'Brien as evidence that the ALJ did not properly consider the evidence in the

record, claiming:

> It is a fact that when Dr. O'Brien testified at the hearing on Dec. 13,
> 2007, the ALJ was rather arrogant toward any testimony Dr. O'Brien
> attempted to give. The ALJ diminished and disregarded Dr.
> O'Brien's opinions at every step, even refusing to look at visual
> evidence that Dr. O'Brien had brought to the hearing. The ALJ went
> so far as to not allow Dr. O'Brien to approach the ALJ to submit this
> evidence, he refused to look at it. The ALJ also told Dr. O'Brien that
> he was in charge and that Dr. O'Brien's opinion is only that, the ALJ
> stated that Dr. O'Brien is only one of many doctors, and that many
> other opinions exist, and that it is his (the ALJ's) decision to decide
> what weight to give Dr. O'Brien's opinions.

*See* Reply to Resp.'s Resp., pp. 11-12 (Docket No. 16). However, the record itself[6] is altogether

inconsistent with Petitioner's allegations as exhibited by the following exchange:

---

[6] Petitioner argues that the ALJ's statements in these respects are conveniently omitted
from the December 13, 2007 hearing transcript, stating:

> Of course none of these statements made by the ALJ during the
> hearing are written in the official transcript that is on pages 398-462
> of the Admin. Rec. because that would look unfavorable to the ALJ.
> Again, the transcript is certified to be true and accurate by the SSA,
> but it is again incorrect, inaccurate, and incomplete. Any Attorney
> who has ever had to acquire one of these transcripts of the SSA
> hearings could attest to their conveniently edited version instead of
> the factual, truthful, and complete version.

*See* Reply to Resp.'s Resp., p. 12 (Docket No. 16). The undersigned cannot guess what may
have been said at the hearing, but removed from the transcript. Instead, its review is limited only
to the record provided to the Court - including the transcript contained within (AR 398-462).

**REPORT AND RECOMMENDATION - 19**

Q: Okay. And I notice that you have a picture here of an MRI. Is that correct?

A: That's right.

Q: And why did you bring that with you today?

A: To show the Judge what his problem is.

ATTY: Okay. Judge, would you like him to show you on a picture what is wrong? The picture was done in –

ALJ: If you can figure out how to put that in the record, you're welcome to, counsel. But I think you already know we've got a problem with that.

ATTY: Okay. Well, the picture is available –

ALJ: Is it a picture, picture, rather than an X-ray?

ATTY: – and I can copy it. Correct.

ALJ: Okay.

ATTY: And I can copy it, if you're willing to admit it as an exhibit.

ALJ: Sure. Go ahead. Just speak up while you're doing it, Doctor.

....[7]

ATTY: And, Your Honor, may we admit that as Exhibit 14F?

ALJ: Yeah. We'll have it marked as 14F. That's fine.

ME: I'll allow you to make a copy of this.

ALJ: That's fine.

(AR 405-407); *see also* (AR 418). Exhibit 14F is now incorporated into the administrative

record. (AR 324).

---

[7] In the meantime, the ALJ and Dr. O'Brien discuss Petitioner's condition, using the exhibit offered during Dr. O'Brien's testimony. (AR 406).

With all this in mind, based upon the record and the December 13, 2007 hearing transcript, it cannot be said that the ALJ "diminished and disregarded Dr. O'Brien's opinions at every stage" as Petitioner suggests.[8]  In the fact, the opposite appears true.  Therefore, Petitioner's argument on this point is without merit.

## IV.  RECOMMENDATION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample,* 694 F.2d at 642.  If the evidence is susceptible to more than one rational

---

[8]  Moreover, it should be mentioned that the ALJ specifically addressed Dr. O'Brien's opinions in the February 14, 2008 Decision, ruling:

> First, the treating physician's opinion that the claimant was "disabled" since 1996 is not binding and is not entitled to controlling weight pursuant to 20 C.F.R. [§] 404.1527[(e)(1)].  However, the medical evidence and other evidence have been carefully considered to determine what weight to assign his opinion that the claimant has been disabled since 1996.  While Dr. O'Brien's objective medical findings are not rejected, his opinion that the claimant was disabled since 1996 was not given great weight because (1) his treatment relationship with the claimant did not begin until nearly ten years later, (2) it was inconsistent with other substantial evidence from treating physician Dr. Stowell who did see the claimant in the course of treatment contemporaneous to 1996 and 1997, and whose reports and opinions were given greater weight and showed progress in capabilities and who restricted him lifting to 20 pounds and limited forward bending, (3) it was not consistent with the claimant's ability to complete a two-year program in automotive technology from 2000 to 2002, (4) it was not consistent with his earlier statements in January 2005 when he wrote, "I don't see anything that is of much significance in the low back MRI scan" (Exhibit 7F, page 16), and (5) he did not provide relevant evidence to support his general impression or opinion that the claimant was disabled since 1996.

(AR 43-44).  Petitioner does not offer any argument addressing the ALJ's rationale with respect to Dr. O'Brien.

**REPORT AND RECOMMENDATION - 21**

interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, it is HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED and that this action be DISMISSED in its entirety, with prejudice.

DATED: **August 24, 2010**

Honorable Ronald E. Bush
U. S. Magistrate Judge